# McFarlane *v.* Plant *et al.*

(Division B.  May 8, 1939.)

[188 So. 530.  No. 33697.]

Augustin Magruder, of Starkville, for appellants.

Leftwich & Tubb, of Aberdeen, for appellees.

Argued orally by **Augusta Magruder**, for appellant, and by **C. L. Tubb**, for appellees.

**Anderson, J.**, delivered the opinion of the court.

Mrs. McFarlane, the appellant, filed her bill in the chancery court of Monroe County against Mrs. Plant, the

appellee, and the trustee, Lusk, in a deed of trust on Mrs. McFarlane's homestead in the city of Aberdeen to cancel and set aside a foreclosure in pais of the deed of trust, at which Mrs. Plant became the purchaser, upon the ground that at the time of the foreclosure the indebtedness secured by the deed of trust had been paid off and discharged. Mrs. Plant made her answer a cross-bill denying the material allegations of the bill, and praying for a writ of possession of the property. The cause was heard on the pleadings and proofs resulting in a decree in Mrs. Plant's favor, from which Mrs. McFarlane appeals.

There was little if any substantial conflict in the material evidence. The facts are these: Mrs. McFarlane's husband, J. C. McFarlane, owned their homestead. Mrs. Plant's husband, J. F. Plant, who was a man of large means, and Mr. McFarlane were close personal and business friends. Mr. McFarlane was president of the Commercial Bank & Trust Company. Mr. Plant was a stockholder and director in that institution. On November 10, 1927, Mr. McFarlane borrowed from Mr. Plant the sum of $3,000 for the payment of which he and his wife executed their note for that amount, payable on November 10, 1932, with six per cent interest payable semi-annually, on May 10th and November 10th, to secure which note they executed the deed of trust involved on their homestead. The homestead was insured against loss by fire. The deed of trust contained the usual loss payable clause —to J. F. Plant and J. C. McFarlane, as their interest might appear.

In the latter part of 1930 what is commonly known as the "Depression" had begun. Banks were failing. On November 27, 1930, the McFarlane residence was destroyed by fire, and on the 16th of the next month the McFarlane Bank failed and closed. McFarlane was largely indebted to his bank, which was afterwards reduced to judgment against him. The fire loss on the residence was adjusted in the sum of $4,464, and on December 26, 1930, the insurance company issuing the policy delivered a check for that amount, payable to J. F. Plant and J. C.

McFarlane. McFarlane deposited the check in the Monroe Banking & Trust Company of Aberdeen to the credit of his wife. The McFarlanes desired to rebuild their home. This insurance money was the only means they had for that purpose. Mr. Plant and his son-in-law, Whitaker, who had a very large part in attending to all of Mr. Plant's business affairs, and Mr. McFarlane met and conferred with reference to that subject. The result was the following agreement among them: McFarlane agreed to turn over to Plant $3,000 of the insurance money to be held by him while the home was being rebuilt, and by Plant to be applied to the cost of rebuilding as such rebuilding progressed, and that the deed of trust indebtedness should continue. At that time the amount due on it, principal and interest, was a little more than $3,000. Accordingly McFarlane drew a check on the Monroe Banking & Trust Company against the insurance money there to the credit of his wife in the sum of $3,000, payable to J. F. Plant, signing his wife's name by him. Plant cashed this check. Brannin & Son, building contractors, were employed by McFarlane to rebuild the home. While the work of rebuilding was in progress, Plant, on December 27, 1930, paid the contractors $1,000, and on January 17, 1931, $2,000. All these transfers of funds were shown by cancelled bank checks, as well as by the testimony of Whitaker, who had a very large part in the whole transaction representing his father-in-law. Mr. Plant died in 1934, and Mr. McFarlane in 1935. Plant left a will disposing of his large estate. His son-in-law, Whitaker, was a very substantial beneficiary under the will. In the division and settlement of the Plant estate, this mortgage indebtedness of the McFarlanes was set aside and apportioned to Mrs. Plant.

The evidence was ample to sustain the finding of the chancellor that the deed of trust indebtedness had not been paid at the time of the foreclosure. Whitaker's testimony to that effect, which was supported by record and other evidence, was most convincing. Amongst the other evidence were the facts that Mrs. Plant had possession, as

her husband had up to the time of his death, of the note and deed of trust evidencing the indebtedness. And furthermore, the indebtedness was not due for nearly two years after the fire and rebuilding of the home. Whether a transaction constitutes payment and discharge of a mortgage is dependent on the intention of the parties thereto. It will not have that effect where they mean to keep the security alive, and not to extinguish it. The proceeds of insurance upon mortgaged property, while primarily a payment on and satisfaction pro tanto of the mortgage debt, may, by agreement between the mortgagor and mortgagee, be diverted and applied to other uses. 41 C. J., Secs. 904 and 905, page 790.

It is argued however that Mrs. McFarlane's husband could not bind her by such an agreement. In considering this question it should be borne in mind that although Mrs. McFarlane joined with her husband in the execution of the note and deed of trust, he owned the home—the title was in him and not in her. The insurance money therefore belonged to him, not to her. Section 1778, Code of 1930, gives the wife the veto power against encumbrances or conveyances by her husband of the exempt homestead, but imposes no limitation of his common law rights to deal with the indebtedness secured by the homestead. Smith v. Scherck, 60 Miss. 491; Herron v. Land, 151 Miss. 893, 119 So. 823. Although neither of these cases is directly in point, they illustrate the principle. In the Smith case the wife joined with her husband in executing a deed of trust on the homestead, which belonged to the husband, to secure a debt due by him. The court held that a new promise in writing by him alone made before the bar of the statute of limitations had attached, operated to prevent such bar and to give a new period for both the debt and the security to run; that the statute did not require the concurrence of the wife in such a new promise. The inequity of Mrs. McFarlane's position is manifest. If she should succeed, she would have the rebuilt home without paying for it. That Plant paid for it out of the insurance money, and neither he nor his estate has ever been repaid

the deed of trust loan, is substantially undisputed, unless, of course, the foreclosure of the deed of trust is upheld. Mrs. McFarlane was not prejudiced in her rights by the disposition made by her husband of the $3,000 insurance money. On the contrary, she was benefited thereby. As the result she now has a home that she would not have had. And, furthermore, the reasonable inference is from all the facts and circumstances in evidence that Mrs. McFarlane either expressly or impliedly consented to the disposition made by her husband of the insurance money.

It is argued on behalf of Mrs. McFarlane that Whitaker was not a competent witness under Section 1529 of the Code of 1930, which provides, among other things, that a person shall not testify as a witness to establish his own claim or defense against the estate of a deceased person, which originated in the lifetime of such a deceased person, or any claim which he has transferred since the death of such decedent. Whitaker, as above stated, was a beneficiary under Mr. Plant's will. The effect of his testimony was to defeat not to establish a claim against the estate. The distributee of the estate of a decedent is a competent witness under the statute to establish a claim of the decedent against the estate of another decedent. Cock v. Abernathy, 77 Miss. 872, 28 So. 18. Illustrating: see Lann & Carter Hardware Company v. Carberry, 114 Miss. 519, 75 So. 377. The statute applies to a direct claim of the witness, not to an indirect one.

Affirmed.