CLAPPER, et al. *v.* POWERS, et ux.

No. 39417 February 7, 1955 77 So. 2d 808

*Satterfield, Ewing, Williams & Shell,* Jackson, for appellants.

*Hall & Callender*, Columbia, for appellees.

Holmes, J.

The appellants, James F. Clapper, Kathryn Kaiser, (Mrs. W. J. Kaiser), Sophia Oettinger and Mollie Oettinger, filed their original bill of complaint in the Chancery Court of Pearl River County against Joseph P. Powers and his wife, Mrs. Alice M. Powers, alleging that they were the owners of an undivided three-fifths interest in 160 acres of land in Pearl River County, and seeking to cancel as clouds upon their asserted title all claims of the defendants thereto. By an amendment to the original bill, William J. Clapper and Harold Clapper, adult heirs at law of John R. Clapper, deceased, were named as additional defendants to the original bill.

It was alleged in the original bill that Mrs. Mary Clapper died intestate on May 28, 1939, leaving surviving

her as sole and only heirs at law five children, namely, James F. Clapper, Kathryn Kaiser, Mrs. J. M. Durst, John R. Clapper, and Mrs. Alice M. Powers; that at the time of the death of the said Mrs. Mary Clapper, she was the owner of the land in question, and that each of her five surviving children inherited an undivided one-fifth interest therein; that Mrs. J. M. Durst died intestate on July 16, 1950, leaving surviving her as her sole and only legal heir her husband, John M. Durst; that the said John M. Durst died November 14, 1950, leaving a last will and testament wherein he devised his estate to the said Sophia Oettinger and Mollie Oettinger; that the said John R. Clapper died intestate December 25, 1946, leaving surviving him as his sole and only heirs at law his adult sons, Harold and William Clapper.

It was further alleged in the original bill that following the death of the said Mrs. Mary Clapper the said Mrs. Alice M. Powers was appointed and qualified as the administratrix of the estate of the said Mrs. Mary Clapper, deceased, on October 9, 1939; that on October 13, 1939, the said Mrs. Alice M. Powers probated a claim against the estate of the said deceased for $670.06; that thereafter, on the petition of the administratrix, the said land was sold to pay the debts and expenses of administration of the estate, it appearing that the deceased at the time of her death owned no personal property; that at the said sale, the land was unlawfully purchased by H. H. Parker, who was the attorney for the administratrix; that the consideration for said sale was grossly inadequate; that at said sale, competitive bidding was discouraged, suppressed and prevented by the administratrix; that two days after the sale the said H. H. Parker, for a nominal consideration, attempted to convey the land to a nominal party, namely, one Clement Powers, and that said conveyance was for the purpose of attempting to hold title for said administratrix until such time as she should be discharged and that the said

Clement Powers was so acting and holding title for and on behalf of said administratrix; that after a final decree had been entered in the administration of the estate approving the administratrix's final account, and prior to her discharge, the said Clement Powers attempted to convey the land to the appellees, Joseph P. Powers and his wife Alice M. Powers; that the sale of said property was in fraud of the rights of the heirs of the said Mrs. Mary Clapper, deceased, and that the attempted purchase of said property by the said Joseph P. Powers and his wife, Alice M. Powers, was fraudulently concealed from the appellants by the appellees, and could not by reasonable diligence have been discovered by the appellants until after January 20, 1944, the date of the recording of the deed from Clement Powers to the appellees; that the conveyance to H. H. Parker by the administratrix pursuant to his purchase at the sale, and the conveyance by H. H. Parker to Clement Powers, and the conveyance by Clement Powers to Joseph P. Powers and his wife, Alice M. Powers, were either null and void, or that they inured to the benefit of the appellants as cotenants.

The prayer of the bill was that the court decree that the appellants were the owners of an undivided three-fifths interest in said land, and that all claims of the appellees thereto be cancelled as clouds upon the title of the appellants.

The answer denied the material averments of the bill and incorporated therein pleas setting up in bar of the action the two years statute of limitation relating to court sales, the ten years statute of limitation, the doctrine of estoppel under Section 598 of the Mississippi Code of 1942, and the doctrine of res adjudicata, based upon the claim that the decree of the chancery court confirming the sale, after due notice to and service of process upon the interested parties, who were adults,

was final and conclusive and binding upon all of the heirs and could not be collaterally attacked.

After a full hearing upon all of the issues involved, the chancellor made a special finding of facts and stated his conclusions of law thereon and rendered a decree dismissing the bill of complaint. The appellants appeal from the decree rendered.

The appellants contend that the purchase of the land by Joseph P. Powers and his wife, Alice M. Powers, was in violation of Section 619 of the Mississippi Code of 1942, providing that an administrator shall not acquire title to any property of the estate of his decedent either directly or indirectly, and further contend that at the time of the conveyance of the land by Clement Powers to Joseph P. Powers and his wife, Alice M. Powers, the said Alice M. Powers was a cotenant of the other heirs of Mrs. Mary Clapper, deceased, and occupied a position of trust toward her cotenants, and that her acquisition of the land inured to the benefit of all of the heirs of the estate of the said Mrs. Mary Clapper, deceased.

These contentions make necessary a consideration of the evidence. We relate the material facts, which are not in substantial dispute except as to the manner of making the sale and the party by whom it was conducted, and as to the latter, we point out the conflicting testimony.

Mrs. Mary Clapper died intestate on May 18, 1939. She left surviving her as her sole and only legal heirs five children, namely: James F. Clapper, Kathryn Kaiser, (Mrs. W. J. Kaiser), Mrs. J. M. Durst, John R. Clapper, and Mrs. Alice M. Powers. Mrs. J. M. Durst died intestate on July 16, 1950, and left surviving her as her sole and only heir at law her husband, John M. Durst. The said John M. Durst died on November 14, 1950, leaving a last will and testament wherein he devised his estate to Sophia Oettinger and Mollie Oettinger. John R. Clapper died on December 25, 1946, leaving sur-

viving him as his sole and only heirs his adult sons, Harold and William Clapper. On October 9, 1939, Mrs. Alice M. Powers was appointed and qualified as the administratrix of the estate of the said Mrs. Mary Clapper, deceased. There was thereafter probated against the estate of the said deceased the claim of Mrs. Alice M. Powers for $670.06, which was a claim for reimbursement for expenses of last illness and funeral expenses advanced and paid by the said Mrs. Powers. An inventory filed by the administratrix on October 2, 1940 showed that no personal property was owned by the deceased at the time of her death. On the same date, the administratrix filed her petition for authority to sell the aforesaid land to pay the debts and expenses of administration. Service of process on this petition was duly obtained upon Mrs. J. M. Durst, Mrs. Kathryn Kaiser, John R. Clapper and James F. Clapper, and in addition thereto, the said Mrs. J. M. Durst filed in the administration proceedings her written consent that the land be sold as prayed for in the petition. On November 6, 1940, the said John R. Clapper and James F. Clapper filed in writing their objections to the sale, alleging that in lieu of selling the property the same should be mortgaged to obtain funds with which to pay the debts of the estate, and offering to advance the necessary funds. After a hearing on the aforesaid petition, a decree of the chancery court was entered on January 27, 1941 authorizing and directing the sale of said land for the purpose of paying the debts and expenses of administration, and directing a report of said sale for confirmation at the next regular term of the court, without the necessity of further process upon the heirs. On May 10, 1941, a report of said sale was filed by the administratrix, showing the same to have been made on April 7, 1941 in accordance with the directions of the decree authorizing the same, and showing that the land was bid in at the sale by H. H. Parker for the sum of $1175

in cash. On May 20, 1941, the court entered a decree confirming the sale and ordering distribution of the proceeds thereof to the heirs. On August 1, 1941, the administratrix filed her petition presenting her final account, and praying for the approval thereof, which final account showed the proceeds derived from said sale. This petition was joined in and signed by Mrs. J. M. Durst and Mrs. Kathryn Kaiser, and process on the petition was duly obtained upon all of the heirs of the estate of Mrs. Mary Clapper, deceased. On September 15, 1941, objection to the approval of the final account was filed by James F. Clapper upon the sole ground that the deceased was a resident of the State of Wisconsin, it being manifestly the purpose of the objector to register objection to the administration of the estate in the State of Mississippi. On February 14, 1942, the court, upon a hearing of the petition for the approval of the final account of the administratrix, entered a decree approving said final account and directing distribution of the funds in the hands of the administratrix, and further directing that upon such distribution the administratrix file a supplemental account for approval and for the final discharge of the administratrix. Pursuant to this decree, the administratrix made distribution of the funds in her hands, and on February 16, 1942, issued and sent to each of the heirs of the estate of Mrs. Mary Clapper, deceased, vouchers representing their respective distributive share, each of said vouchers being in the amount of $63.27 and bearing on the face thereof the following notation: "My full, final and complete share in and to the estate of Mrs. Mary Clapper, deceased, in accordance with a decree of the Chancery Court of Pearl River County, Mississippi." Each of the heirs received and cashed his or her voucher and retained the proceeds thereof. On March 18, 1942, a petition for the approval of the administratrix's supplemental account was filed, showing distribution of the estate, and on May 30, 1942,

the Chancery Court entered its decree approving the administratrix's supplemental final account and discharging the administratrix. Pursuant to the sale of the land as authorized and directed by the court, the administratrix, on May 22, 1941, executed a conveyance of the land to H. H. Parker, which deed was filed for record on September 6, 1941. On May 24, 1941, H. H. Parker executed a conveyance of the land to Clement Powers, which deed was filed for record on January 20, 1944. On March 6, 1942, Clement Power executed a conveyance of the land to Joseph P. Powers and wife, Alice M. Powers, which deed was filed for record on January 20, 1944.

Joseph Reyer, a witness for the appellants, testified that he was present at the sale and that the sale was conducted by H. H. Parker, and that Mr. Parker auctioned the land off at the sale; that he, Reyer, was one of the bidders at the sale and that there were two or three other bidders who appeared; that he bid the sum of $1200 for the land and that Parker then stopped the sale and told him that he, Reyer, had bought the land; that later Parker told him that it would be necessary to have the land surveyed and that the heirs had a certain period of time in which to redeem the land from the sale; that he, Reyer, did not pay the $1200 bid by him because of what Parker had told him; that after the sale, he wrote several letters to Mrs. Alice M. Powers submitting offers for timber on the land; that he would have bid at the sale up to $1700 had it become necessary. The testimony of Joseph Reyer was corroborated by his son, who, at the time of the trial, was 24 years of age, and at the time of the sale was 11 years of age. The son testified that two or three other bidders appeared at the sale and that his father bid $1200 and that said bid was the highest bid.

Mrs. Kathryn Kaiser, testifying on behalf of the appellants, testified that she had no knowledge that Mrs.

Alice M. Powers was claiming the entire title to the land until sometime in the year 1950.

Mr. H. H. Parker testified as a witness for the appellees. He testified that he was the attorney for the administratrix; that he had advised the administratrix that she could not purchase at the sale, and that it would be well for her to contact some prospective bidders and interest them in the sale in order that the land might not be sold at a sacrifice; that he had been requested by Mr. Clement Powers, a brother-in-law of the administratrix, to bid for him at the sale up to $1200; that in order to comply with this request and bid for Clement Powers, he arranged with the chancery clerk to cry off the land and that the land was cried off by the chancery clerk; that he bid for Clement Powers up to $1175, and that this being the highest bid, the land was struck off to him and he purchased the land for Clement Powers for the sum of $1175; that he prepared two deeds, one from the administratrix to him, and the other from him to Clement Powers, and sent them to the administratrix with instructions to collect the purchase price and then deliver the deeds; that he handled the matter in this way as he did not know Clement Powers and he did it as a matter of protection if anything went wrong in consummating the sale; that after sending the deeds to the administratrix, he received from her the receipted probated account and a check for the difference between that and the amount of the bid of $1175, which check he deposited in the bank to the credit of the administratrix. He further testified that there was no understanding of any kind between him and Clement Powers and Mrs. Alice M. Powers or the latter's husband; that the land was to be bid in and held to be later conveyed to Mrs. Alice M. Powers. He denied that Joseph Reyer had bid the sum of $1200 at the sale, and denied that the bid of Joseph Reyer was the highest bid submitted, and denied that he had told Joseph Reyer that it would be

necessary to have the land surveyed or that the heirs had a right to redeem it.

Joseph P. Powers, Mrs. Alice M. Powers, and Clement Powers, testifying in behalf of the appellees, asserted affirmatively that there was no understanding or agreement of any kind whereby the land was to be bought by Clement Powers and thereafter conveyed to Mrs. Alice M. Powers. They further testified that some months after Clement Powers had bought the land, he approached Joseph P. Powers and his wife with a view of selling the land to them, saying that he needed the funds to invest in a drug store, or drug business; that he thereafter sold and conveyed the land to Joseph P. Powers and Alice M. Powers for the sum of $1600, and that said sale was in absolute good faith and was not pursuant to any previous understanding, agreement or arrangement had with Joseph P. Powers and his wife, Alice M. Powers.

The proof further showed that for the years 1942-1943 the land was assessed on the assessment roll for Pearl River County in the name of H. H. Parker. Mr. Parker testified that he did not have the land assessed in his name and that it was probable that the assessor saw on the record the deed from the administratrix to him and for that reason made the assessment in his name. For the years subsequent to the years 1942 and 1943, the taxes on the land were paid by Joseph P. Powers and his wife, Alice M. Powers.

The chancellor, in his findings of fact, found that the decree of the court ordering the sale was valid in all respects and that due process on the petition for the sale of the land had been obtained upon the heirs prior to the rendition of the decree; that the sale was conducted and held in accordance with the provisions of the decree; that H. H. Parker submitted the highest bid at the sale and that the amount of the bid was the fair and reasonable value of the land; that the purchase price was duly

paid; that there was no suppression or discouragement of bids at the sale; that the decree for confirmation was in all respects valid and that service of process upon the petition for the confirmation of the sale had been duly obtained upon all of the interested parties; that the conveyance by H. H. Parker to Clement Powers was legal and valid, and that the transaction between the parties was in good faith; that the conveyance by Clement Powers to Joseph P. Powers and his wife, Alice M. Powers, was legal and valid, and that in making said conveyances the parties were acting in good faith; that at the time Joseph P. Powers and Mrs. Alice M. Powers purchased the property from Clement Powers the estate of Mrs. Mary Clapper had previously parted with title to the land; that the heirs at law had actual and constructive notice of the administratrix's sale of the land, and that said heirs received, accepted and retained their pro-rata share of the proceeds of the sale. The chancellor expressly found that H. H. Parker and Clement Powers, in acquiring the land, were not acting as agents of or for the use and benefit of Mrs. Alice M. Powers, but on the contrary, that the acquisition of said lands by them in each instance was in absolute good faith and for a valuable consideration and wholly without any prior understanding or agreement with the said Mrs. Alice M. Powers.

The chancellor's findings of fact were abundantly supported by the evidence and we are not warranted in holding that they were manifestly wrong. We must, therefore, accept as true the facts as found by the chancellor. Under these facts, it clearly appears that the appellants failed to meet the burden of proof which rested upon them to prove by a preponderance of the evidence the material allegations of their bill of complaint. On the contrary, it appears, and the chancellor so found, that all of the parties acted in good faith; that their acts were not characterized by fraud or conceal-

ment; that Mrs. Alice M. Powers was guilty of no breach of trust, either as an administratrix or as a cotenant; that the land was validly sold for its then fair value to Clement Powers, a stranger to the estate, and was thereafter lawfully purchased by Joseph P. Powers and his wife, Alice M. Powers, in good faith. These facts render inapplicable the authorities cited and relied upon by the appellants.

It is argued by the appellants that they were not apprised of the transactions until sometime in the year 1950. It taxes one's credulity, however, to think that when the heirs received and cashed their distribution checks and retained the proceeds thereof they did not know that the same represented their respective shares of the proceeds of the sale of the land which was the only asset of the decedent's estate, and that the estate had parted with title to the land. Yet no attack was attempted to be made upon the sale until this suit was filed on November 27, 1951.

The facts as found by the chancellor show that at the time Clement Powers conveyed the land to Joseph P. Powers and his wife, Alice M. Powers, the estate of Mrs. Mary Clapper, deceased, had wholly parted with title to the land and it no longer constituted property of the estate of the decedent. Section 619 of the Mississippi Code of 1942, therefore, has no application to the facts of this case. The inhibition of the statute is against the direct or indirect acquisition by an administrator of property of the estate of the decedent. That is not the case before us. Likewise the rule which prevents a cotenant from acquiring the full title to the common property to the exclusion of the other cotenants has no application under the established facts of this case. The cotenancy which existed between Mrs. Alice M. Powers and the other heirs of Mrs. Mary Clapper, deceased, had been terminated by the court sale at the

time she and her husband purchased from Clement Powers, and, therefore, such cotenancy no longer existed.

■■ ■ Hence we conclude, under the facts of this case as found by the chancellor on ample proof, that the appellees, Joseph P. Powers and his wife, Alice M. Powers, were not precluded from acquiring in good faith from Clement Powers the full title to the land for their own benefit. This conclusion is amply supported by the authorities generally, and by the prior pronouncements of this Court.

". . . it is held that if without collusion a third person purchases the property at a judicial sale for the debt of all, and afterwards conveys the title to one of the former cotenants, the latter takes a good title as against his erstwhile cotenants, since the acquisition of title by the third person operates to terminate the cotenancy." 14 Am. Jur., p. 126.

"While the general rule noticed above precludes a cotenant from acquiring an adverse claim to the common property through administration proceedings so long as the cotenancy continues to exist, it can not inhibit him from so doing thereafter." 14 Am. Jur., p. 126.

"Where a cotenancy has been extinguished by a judicial sale of the property, as on foreclosure and expiration of the period of redemption, it has been held that the rule precluding a cotenant from acquiring a title to the common property for his own benefit does not apply in the absence of fraud or an agreement to acquire it for the common benefit, and the motives which prompted him to do so are immaterial; nor will the fact that sucn tenant in common also has a life estate prevent him from acquiring such title." 86 C. J. S., p. 429.

"The rule precluding the acquisition of title to common property by a cotenant for his sole benefit is coextensive only with the existence of the relationship of cotenancy and does not apply to a purchase by a

cotenant after the cotenancy has terminated . . ." 86 C. J. S., p. 425.

The foregoing principles have been adopted and approved by this Court in the case of Griggs v. Griggs, 67 So. 2d 450, wherein the Court said:

"The rule which prevents one tenant in common from purchasing an outstanding title to the common property and setting it up against his cotenant is founded upon the confidential relation which is presumed to exist between them . . . But the rule stated above is predicated upon the existence of a tenancy in common; and the rule has no application where the relation of tenants in common does not exist."

We would not relax the wholesome provisions of Section 619 of the Mississippi Code of 1942 in a case where the facts render the same applicable. Nor would we relax the rule which prohibits a cotenant from acquiring the full title to the common property to the exclusion of the other cotenants, but we simply hold that said statute and said rule are not applicable under the facts of this case.

In view of our conclusion on the accepted facts, it is unnecessary for us to pass upon or deal with the defenses of the statutes of limitation, estoppel and res adjudicata.

 ██ The appellants also assign as error that the chancellor erred in permitting the appellees, Joseph P. Powers and Alice M. Powers to testify, for the reason that their testimony sought to establish their claim against the estate of Mrs. J. M. Durst, deceased, contrary to the provisions of section 1690 of the Mississippi Code of 1942. We think that the contentions under this assignment are not well taken. In the first place, the estate of Mrs. J. M. Durst, deceased, is only indirectly involved and the statute relied upon applies to a direct claim of the witness and not to an indirect one. McFarlane v. Plant, et al, 185 Miss. 616, 188 So. 530. ██ In the next

place, the findings of the chancellor are amply supported by the testimony of other witnesses whose competency is not challenged, and, therefore, the ruling of the chancellor as to the competency of Joseph P. Powers and Alice M. Powers, even if erroneous, constitutes no reversible error. Rosenbaum v. Bohannon, 204 Miss. 9, 36 So. 2d 798.

It follows from the views hereinbefore expressed that the decree of the chancellor dismissing the original bill was, in our opinion, correct, and that the same should be and is affirmed.

Affirmed.

*Roberds, P. J.*, and *Lee, Kyle* and *Gillespie, JJ.*, concur.