JAMES, et al. *v.* BARBER, et al.

No. 42345        June 4, 1962        142 So. 2d 21

*Travis & McKee,* Jackson; *Gartin & Hester,* Laurel, for appellants.

*McFarland & McFarland,* Bay Springs, for appellees.

KYLE, J.

This case is before us on appeal by Mrs. John F. James, and others, complainants in the court below, from a decree of the Chancery Court of the Second Judicial District of Jasper County rendered in favor of Mrs. Dovie Cox Barber and others, defendants in the court below, dismissing with prejudice complainants' petition to establish an alleged lost or destroyed will and for probate of same as the last will and testament of Mrs. Ruby Cox Newcomb, deceased.

The record shows that Mrs. Ruby Cox Newcomb died on August 23, 1960, and that she left surviving her as her only heirs at law three sisters, Mrs. Dovie Cox Barber, Mrs. Vannie Cox Little and Mrs. Maude Cox Myers; that C. H. Little was duly appointed administrator of the estate of the deceased by a decree of the chancery court of said county, dated September 8, 1960, and that letters of administration were duly issued to him as such. The petition to establish the alleged lost or destroyed will and for probate of same was filed by the appellants on December 12, 1960. The complainants named in the petition were the sisters and heirs of the deceased brothers of William Luther Newcomb, the deceased husband of Mrs. Ruby Cox Newcomb, deceased. The defendants named in their petition were the three surviving sisters of Mrs. Newcomb and the administrator of her estate.

The complainants alleged in their petition that they were the devisees and legatees under the last will and testament of Mrs. Ruby Cox Newcomb, deceased, which was duly executed by the said testatrix and duly attested by two witnesses sometime prior to her death.

The complainants further alleged that said will was placed by the testatrix in a metal safety box in her home and remained in full force and effect and was never revoked by her or by anyone else authorized by her to do so; that the said testatrix, during the month of July, 1960, suffered a paralytic stroke and was removed from her home to the Jones County Community Hospital at Laurel where she thereafter became incapacitated both physically and mentally to such an extent that it was legally impossible for her to destroy said will; and that said will was neither destroyed nor revoked between the date in which the testatrix entered the hospital and the date of her death. The complainants attached to their petition as Exhibit "A" a reconstructed copy of the alleged will and asked that the said instrument be established as the last will and testament of Mrs. Ruby Cox Newcomb, deceased, and that said instrument be admitted to probate as such.

The instrument attached as Exhibit "A" to the complainants' petition and offered for probate as the last will and testament of Mrs. Ruby Cox Newcomb was a typewritten reconstructed copy of the alleged last will and testament of the deceased which was dated, "the ———— day of ———————— 195———." The instrument did not show the names of any subscribing witnesses.

The provisions of the purported will were substantially as follows: Jack Stuart was appointed Executor of the will without bond. The testatrix then devised and bequeathed to Mississippi College a 40-acre tract of land described therein and situated in Jasper County. The testatrix then directed that her executor provide "reasonable medical care" for her deceased husband's nephew, Floyd Newcomb, during his lifetime, "said medical care to be paid by my executor as in his opinion the need demands * * *." The testatrix then bequeathed and devised "unto Jack Stuart, trustee and in trust, the land in the Town of Bay Springs on and in which

is contained mineral deposits which has been operated as such, to operate, manage and control for a period of ten years following the date of my death." The testatrix expressed her desire that her said executor serve as trustee "in the management, operation and control of said mineral water business," and that all proceeds from the operation thereof should be divided equally between her husband's heirs and her heirs. The trustee was also vested with power to sell the business and the land containing the mineral deposits, and if such sale were consummated the trustee was directed to divide one-half of the proceeds of such sale, in equal parts, among the testatrix' three sisters; and the testatrix directed that the other undivided one-half of the proceeds of such sale be divided among the heirs of the testatrix' deceased husband, and "that they share in such proceeds in the same manner as though said undivided one-half interest had been inherited by them from my husband under the laws of descent and distribution." The testatrix then bequeathed to her sisters surviving her an undivided one-half of all of the rest and residue of her estate, to be shared among them equally, and to her husband's brothers and sisters the other undivided one-half of all the rest and residue of her estate, to be divided among them as though they had inherited same from her husband under the laws of descent and distribution of the State of Mississippi.

The defendants filed their answer to the complainants' petition on March 27, 1961, and in their answer the defendants denied that the said Mrs. Ruby Cox Newcomb died testate. The defendants denied that Mrs. Ruby Cox Newcomb had ever executed any such instrument as that attached to the complainants' petition; and the defendants denied the remaining material allegations of the petition. On May 22, 1961, a motion was filed by Mrs. John F. James, one of the complainants, suggesting the death of Mrs. Betty Newcomb Haden, one of

the original complainants, and asking that the suit be revived as to Mrs. Haden's interest in the name of her heirs at law. An order of revivor was thereupon duly entered reviving the suit as to Mrs. Haden's interest therein in the name of her heirs; and on July 17, 1961, Mrs. Haden's seven children filed a formal instrument of writing in which they made themselves parties complainant in place of their mother and adopted the averments of the complainants' original petition.

The cause was heard by a special chancellor, in vacation, during the month of August, 1961.

Twenty witnesses testified during the hearing before the special chancellor. The only witnesses who testified concerning the execution of the alleged will, a reconstructed copy of which was attached to the complainants' petition, and the contents of the alleged will, were Jack Stuart, a merchant and cattleman of Morton, Mississippi, who was called to testify as a witness for the complainants, and Robert McFarland, the attorney who prepared the alleged will and was called to testify as a witness for the defendants.

Stuart testified that he had known Mrs. Newcomb and had had business dealings with her for a period of about five years prior to her death; that he went with Mrs. Newcomb to the law office of McFarland & McFarland, in the Town of Bay Springs, sometime between eighteen months and two years prior to Mrs. Newcomb's death; and was present when the will was prepared by Robert McFarland or under his direction. He stated that after the will had been typewritten, it was read aloud in the presence of Mrs. Newcomb and was signed by Mrs. Newcomb and was attested by Stuart and Mr. McFarland's secretary as witnesses. Stuart testified that Mrs. Newcomb had discussed the making of a will with him several times prior to the date of the signing of the will in Mr. McFarland's office, and that he was present and gave the directions for the making of the will and Mrs.

Newcomb made some suggestions, which Mr. McFarland of course took into account when he dictated the will to his secretary. Stuart stated that he had an independent recollection of the contents of the will; that a ten-year trust was to be set up with regard to the mineral property adjacent to Mrs. Newcomb's home; and that the property was to be divided between the heirs of Mrs. Newcomb and the heirs of her deceased husband; that the 40 acres of land mentioned in the will was to go to Mississippi College; and that Stuart himself was to be executor of the will. Stuart stated that there was a specific bequest to ''someone named Green'', a relative who was crippled and lived in Louisiana, and was unable to provide for himself and his family — he was to be taken care of. Stuart stated that he had several conversations with Mrs. Newcomb relative to the will after it was executed; that he saw the will on several occasions; that the last time he saw the will was about three weeks before Mrs. Newcomb's death when he took her to Laurel to attend to some banking matters. Stuart stated that he visited Mrs. Newcomb three times while she was in the hospital, but he had no conversation with her about the will at that time; that after her death Mr. McFarland went with him to Mrs. Newcomb's home, and they made a search for the will but were not able to find it. On cross-examination Stuart admitted that the crippled beneficiary named in the will, who was to be cared for, died during Mrs. Newcomb's lifetime, and he was not sure that his name was Green. He stated that he never read the will again after he heard it read in Mr. McFarland's office, but he asked Mrs. Newcomb later if she had changed her will and she said she had not. He stated that the will was in a metal box in Mrs. Newcomb's home when he saw it the last time; and he admitted that what he saw was the back of a blue manuscript cover.

Robert McFarland testified that Mrs. Newcomb came to his office with Jack Stuart and he prepared a will

for her, about six months after Mr. Newcomb's death on June 8, 1955; that he had made a careful search of his file and had been unable to find a copy of the will which he prepared. McFarland stated that he could say definitely that the reconstructed instrument attached to the complainants' petition and offered for probate was not a copy of the will which he prepared. He could make that statement for several reasons: First, he would not have prepared a will with a provision in it for the medical care of Floyd Newcomb to extend over the lifetime of Floyd Newcomb, which would mean that the administration of the estate would be pending in court for years. Second, the provision in the will offered for probate devising the land to Jack Stuart was not in the will which he prepared. Mrs. Newcomb would not have turned over to Jack Stuart or any one else the uncontrolled right in his discretion to sell the land and other property belonging to her. Third, there was no devise made to Mississippi College in the will which he prepared. McFarland stated that there was a provision in the will which he prepared for the benefit of Floyd Newcomb, but what the provision was he could not recall.

Other witnesses were called to testify for the respective parties concerning statements alleged to have been made by Mrs. Newcomb during the last four or five years of her life as to the manner in which she expected to dispose of her property to take effect at her death, and concerning other wills which she had prepared herself, or had prepared and executed, and the search which had been made for a will after her death. A fair summary of the testimony of those witnesses was made by the chancellor in his findings of fact; and no useful purpose would be served by our undertaking to review in detail the testimony of each witness.

At the conclusion of the evidence the chancellor found that about six months after June 8, 1955, the date of the death of her husband, William Luther Newcomb,

Mrs. Newcomb, in the company of Jack Stuart, went to the law office of Robert McFarland, in the Town of Bay Springs, where she had prepared for herself a last will and testament; that Jack Stuart was present in the office of McFarland when the will was prepared. The chancellor found that the will prepared for Mrs. Newcomb by McFarland contained no devise to Mississippi College and no provision setting up Jack Stuart as trustee; that there was some provision in the will which would have benefited Floyd Newcomb, a nephew of the testatrix' deceased husband, whose death, according to the testimony of witnesses, occurred sometime during the year 1957. The chancellor stated that, according to the testimony of Jack Stuart, the above mentioned provisions were in the will prepared by Mr. McFarland, and according to the testimony of Jack Stuart there were other clauses in the will which provided that all of the rest of the testatrix' property should be divided equally between her heirs and the heirs of her deceased husband; but the court would not undertake to say what the provisions of the will prepared by Mr. McFarland were. The chancellor stated that, according to the testimony of Jack Stuart, the will was executed in the office of Mr. McFarland, but Mr. McFarland would not say that the will which he prepared was or was not executed in his office. The chancellor stated that he was not clearly convinced that the will was executed at that time, but for the purpose of his decision in the case he would assume that it was duly executed at that time.

The chancellor found that Mrs. Newcomb was of sound mind and mentally competent to make a will ''up and almost to the very time of her death;'' that, as a matter of fact, during the five-year period in which Mrs. Newcomb did business with Jack Stuart, she had several last wills and testaments drawn up, including wills written in her own handwriting, but the contents of none of said instruments and the due execution thereof had been

proved to the satisfaction of the court. The chancellor found that Mrs. Newcomb had in her possession about three weeks before her death an instrument which, according to the testimony of some of the witnesses, was her last will and testament; that there was some testimony to the effect that she kept the instrument in a little black metal box furnished to her by Jack Stuart; that there was other testimony to the effect that the instrument was kept in a safe along with other papers; that, according to the testimony of Mrs. Maude Myers, who was called to testify as an adverse witness by the complainants, Mrs. Newcomb kept the instrument in her purse or handbag; that a diligent search had been made to locate a will after Mrs. Newcomb's death, but no such instrument or a copy thereof had been found. The chancellor found that during the last few years of her life, after the death of her husband, Mrs. Newcomb made statements on several occasions that she was going to leave part of her property to her deceased husband's kinsmen, and that she also made statements on several occasions during that period of time that she was not going to have a will when she died and all of her property would go to her sisters.

The chancellor stated that there was some testimony in the record to show, and the court so found as a fact, that Mrs. Maude Myers went to Mrs. Newcomb's home on one occasion while Mrs. Newcomb was confined in the Jones County Community Hospital during her last illness, for the purpose of obtaining and taking to Mrs. Newcomb some Southeastern Baptist College bonds; but for the court to say that the case of Adams, Executor, v. Davis, et al., 233 Miss. 228, 102 So. 2d 190, was controlling in this case because of Mrs. Maude Myers having access to Mrs. Newcomb's home while Mrs. Newcomb was in the hospital from which she did not return, would be a finding by the court that Mrs. Myers had committed a crime in destroying the will; and there was no evidence

in the record to support such a finding. The chancellor was of the opinion that the complainants had failed to establish, by such proof as is required in cases of this kind, that Mrs. Newcomb left in existence at the time of her death a last will and testament. The chancellor therefore found that Mrs. Newcomb died intestate.

A decree was therefore entered dismissing with prejudice the petition to establish the alleged lost or destroyed will and for probate of same; and from that decree the complainants have prosecuted this appeal.

The first point argued by the appellants' attorneys as grounds for reversal of the decree of the lower court is that the court erred in sustaining the appellees' objections to the testimony of several of the heirs of Mrs. Betty Newcomb Haden, who were offered as witnesses to testify on behalf of the appellants concerning statements made to them by Mrs. Newcomb to the effect that she had made a will whereby her late husband's heirs and next of kin would share in the distribution of her property after her death.

We think there was no error in the court's action in sustaining the appellees' objection to the testimony of Mrs. Haden's heirs, who had succeeded to their mother's rights as parties interested in the suit, concerning statements made to them by Mrs. Newcomb to the effect that she had made a will whereby her late husband's heirs and next of kin would share in the distribution of her property after her death.

Section 1690, Mississippi Code of 1942, Rec., provides that, "A person shall not testify as a witness to establish his own claim or defense against the estate of a deceased person which originated during the lifetime of such deceased person, or any claim he has transferred since the death of such decedent." The claim which the heirs of Mrs. Betty Newcomb Haden, deceased, were seeking to establish, when they were called to testify as witnesses for the complainants, was a claim against the

Estate of Mrs. Ruby Cox Newcomb, deceased, which originated during the lifetime of Mrs. Newcomb. The claim was a claim in which Mrs. Haden's heirs had a direct interest at the time when their testimony was offered.

In discussing the nature of the interest which will render a witness incompetent to testify in a case of this kind, the textwriter in 97 C.J.S., 605, Witnesses, Sec. 167b, says: "The competency of a witness, in so far as his interest is concerned, generally depends on the facts as they exist at the time when his testimony is offered, rather than at the time of the filing of the petition. Accordingly, one who is interested at the time of testifying is incompetent, although he had no interest at the time of the occurrence as to which his testimony is offered."

■■ ■ This Court has held in numerous cases that an heir, or a devisee or legatee, is disqualified under the above mentioned Code Section 1690, Code of 1942, to testify as a witness in a will contest. Whitehead v. Kirk, 104 Miss. 776, 61 So. 737, 62 So. 432, 51 L.R.A. (N.S.) 187. Ann. Cas. 1916A, 1051; and cases cited. See also In Re Estate of Hansen v. Atkison, 224 Miss. 344, 80 So. 2d 12.

In the Whitehead Case, supra, the Court, in discussing the policy of the above mentioned statute which appeared as Section 1917, Code of 1906, said:

"The policy of the statute is to close the mouth of the living, because death has sealed the lips of the dead. In the instant case the husband cannot speak in defense of his right to dispose of one-half of his estate by will; and, if the policy of the law means anything, the living should not be permitted to establish a state of facts which the defendant cannot now deny, when, as here, the living wife absolutely fixes her claim to that portion of the estate * * *. In short, the word 'claim' as used in this statute, is employed in a broad

and general sense; and it draws into the prohibition all testimony, the direct, immediate, and final effect of which is to establish in the witness' own behalf a right in or to things prior to the death.''

The appellants have cited, in support of their contention that the Haden heirs should have been permitted to testify concerning statements made by Mrs. Newcomb to them or in their presence to the effect that she had made a will whereby her late husband's heirs would share in the distribution of her property, the cases of McFarlane v. Plant, 185 Miss. 616, 188 So. 530, and Clapper v. Powers, 222 Miss. 878, 77 So. 2d 808. But neither of those cases is controlling here. In the McFarlane case the effect of the testimony of the witness Whitaker was to defeat, not to establish, a claim against the estate; and Whitaker had no interest in the setting aside of the foreclosure of the deed of trust which constituted the subject matter of that suit. In the Clapper case the court stated in its opinion that the estate of Mrs. J. M. Durst was only indirectly involved, and that the findings of the chancellor were amply supported by the testimony of other witnesses whose competency was not challenged. In the case that we have here the Haden heirs were directly interested in establishing their claim to a share in the estate of Mrs. Newcomb under and by virtue of the alleged will which had been offered for probate.

It is next argued that the court erroneously concluded that proof of the crime of destroying a will was necessary before the presumption which arises upon the death of a testator whose will cannot be found after his death can be overcome or properly rebutted. But we think there is no merit in that contention.

It is next argued that the decree of the lower court was against the overwhelming weight of the evidence, and the decree should be reversed for that reason. But we think there was ample evidence in the record to

support the chancellor's finding that the complainants had failed to establish by clear and convincing evidence that Mrs. Ruby Cox Newcomb left in existence, or believed that she left in existence at the time of her death, a last will and testament.

■■ In Page on Wills, Bowe-Parker Revision, Vol. 3, p. 697, Sec. 29.139, the textwriter says: "If no will is found at the death of the owner of property, it will be presumed that he died without a will. If a will or codicil, known to have been in existence during testator's lifetime, and in his custody, or where he had ready access to it, cannot be found at his death, a presumption arises that such will was destroyed by testator in his lifetime with the intention of revoking it, and in the absence of rebutting evidence this presumption is sufficient to justify a finding that the will was revoked." The evidence to overcome the presumption that a lost will was destroyed by the testator animo revocandi must be clear, satisfactory and convincing. The presumption of revocation is not overcome by proof that persons injuriously affected by the will had opportunities to destroy it. 57 Am. Jur., 389, Wills, Section 568.

■■ While there is no direct proof in the case that we have here to show that Mrs. Newcomb destroyed the will referred to in the complainants' petition, the proof clearly shows that the will was in her possession when last seen and could not be found after her death; and under these circumstances there is a strong presumption, in the absence of other evidence, that the will was revoked by destruction by the testator animo revocandi, and this presumption stands in the place of positive proof. Collyer v. Collyer, 110 N. Y. 481, 18 N. E. 110, 6 Am. St. Rep. 405; Scott v. Maddox, 113 Ga. 795, 39 S. E. 500, 84 Am. St. Rep. 263.

The chancellor in this case, however, was not required to rely entirely upon the presumption that the will offered for probate had been destroyed by the testatrix

animo revocandi. C. H. Little, a brother-in-law of Mrs. Newcomb, who had qualified as administrator of her estate, testified that Mrs. Newcomb spent the day with him and his wife about six weeks before she was carried to the hospital; that she stated to him at that time that she was going to name him as administrator of her estate, and that she said to him, "After all my three sisters are my only surviving relatives and they are entitled to what I have left after my * * * legal indebtedness is satisfied * * * and I believe you will give each of them a fair part." Little also testified that Mrs. Newcomb stated to him at that time that she had helped Floyd Newcomb, and if he had lived, it was her intention to mention him in a will, but Floyd was deceased, his widow had remarried, and his daughter had also married, and she did not feel that she owed Floyd's family any more assistance. Mrs. Maude Myers, who was more closely associated with Mrs. Newcomb than any other person, testified that Mrs. Newcomb told her on Wednesday before she was carried to the hospital on Friday that she was not going to have a will; that Floyd Newcomb was dead, and she had fulfilled her promise to her husband that she would see after Floyd.

In our opinion there was no error in the chancellor's finding that the appellants' proof was insufficient to establish the existence of the alleged lost or destroyed will at the time of her death, or to overcome the presumption that the will had been destroyed by the testatrix during her lifetime with the intention of revoking it. We find no merit in the other points assigned and argued as grounds for reversal of the judgment, and the decree of the lower court is therefore affirmed.

Affirmed.

*McGehee, C. J.,* and *Arrington, Ethridge* and *Rodgers, JJ.,* concur.