ROBERTSON, Justice,
for the Court:
I.
This is the case of the will not found. We know that the testator made a will, leaving his entire estate to his sole surviving daughter, and we have every reason to believe that for years he kept that will in a locked desk drawer. The testator died in late December, 1988, and diligent searchers failed to find the will.
The daughter held a photostatic copy of the will, depicting identically the original, and thereupon sought probate. The testator’s grandson, an heir-at-law, objected, arguing that the circumstances gave rise to a presumption that the testator had revoked his will by destroying it. The Chancery Court found for the proponent daughter, and the grandson appeals.
II.
A.
Felton L. Leggett was a long-time resident of Jackson, Mississippi. Leggett departed this life on December 29, 1988, eleven days short of his eighty-first birthday. Leggett was a widower, his wife having died on June 5, 1970.
Via a prior marriage which had ended in divorce, Leggett had two children, both daughters, Jacqueline Leggett Smith, who lives in Jackson, and JoAnn Leggett Berry, who passed away on June 27, 1978, predeceasing her father and leaving one child, Carl N. Berry, Jr.
Leggett’s heirs-at-law at his death were his daughter, Jacqueline Leggett Smith, and his grandson, Carl N. Berry, Jr. Smith was the plaintiff proponent below and is appellee here. Berry was the contestant below and is appellant here.
On August 15, 1982, with the assistance of Jackson lawyer Hugh Cunningham, Leg-gett executed his Last Will and Testament. In that will, he bequeaths to his daughter, Jackie Smith, “all of the property of which I may die seized and possessed, either real, personal or mixed, and wheresoever situated, regardless of kind and character.” All seem to think Leggett took the will and placed it under lock and key in a roll-top desk in the living room in his home. We know that the day he signed his will Leg-gett gave his daughter a photostatic copy of it.
Leggett’s last months were difficult ones. He was often confused and disoriented. His physical condition deteriorated to the point where those close to him decided he needed round-the-clock sitters. On October 6, 1988, Leggett gave his daughter, Jackie, his power of attorney, saying he could no longer handle his financial af *402 fairs. A conservatorship followed on November 28, 1988, the Chancery Court, finding that he suffered from Alzheimer’s Disease, was senile, mentally incompetent and incapable of managing his affairs. Leg-gett spent his last days in a nursing home and died four days after Christmas, 1988. His will was never found.
B.
On February 1, 1989, Jacqueline Leggett Smith filed in the Chancery Court of Hinds County, Mississippi, her Petition to Probate Will in Solemn Form. As evidence of the form and content of that will, she exhibited the photostatic copy of the August 15, 1982, will her father had given her. Berry did not seriously contest Leggett’s execution nor publishing of this will, nor the authenticity of the copy exhibited. The testimony of the subscribing witnesses, together with the other evidence, removes any lingering doubt that Leggett did, in fact, make and publish a Last Will and Testament on August 15, 1982, in the form and with the content of that exhibited to the Court.
Berry did question, however, the will’s present power to direct descent of Leg-gett’s estate and relies here, as below, upon a presumption of revocation said to emanate from the fact that the will was known to have been under Leggett’s control and was not found at his death. He argued the Court should thereupon hold Leggett revoked his will, Miss.Code Ann. § 91-5-3 (1972), and declare that Leggett died intestate, in which event Berry should take half of his estate.[1] Miss.Code Ann. §§ 91-1-3 and -11 (1972).
The Chancery Court heard considerable testimony from Smith, Berry, two sitters and friends. The Court found as a fact that
Absolutely no evidence whatsoever was ever offered in the trial of this case that proved the destruction of the August 15, 1982 Will nor is there any scintilla of evidence which would indicate that Mr. Leggett ever expressed any desire to change or revoke his Will. Further, no evidence was presented that makes it probable that Mr. Leggett would have wished to revoke his Will which in turn requires only slight evidence to rebut the presumption. To the contrary, the evidence clearly and convincingly establishes that Mr. Leggett made frequent references to his Will; that Jackie would get everything, that he had taken care of Jackie and that he did not want Carl Berry, Jr. (Sonny) to have any of his property.
The Court further discussed the facts, cited Mississippi authority, and held, in the end,
that the overwhelming weight of the evidence shows that Felton Leggett, after executing his will, did not revoke it and had no intention of revoking it, and that such evidence amply rebuts the presumption arising by reason of the fact that the will was not found after his death.
On April 3, 1990, the Court entered final judgment admitting the will to probate in solemn form.
III.
The maker of a will may certainly revoke it, but if he does so, he must at the time possess that same mental capacity required by law before he could make the will in the first place. Watkins v. Watkins, 142 Miss. 210, 234, 106 So. 753, 757 (1926); T. Lee, An Examination of Various Aspects of Mississippi Wills Law, 36 Miss.L.J. 345, 357 (1965). Destroying a will is one recognized means of revoking it, provided the proof suggests the testator’s intent to revoke, not an accidental or unwitting destruction. McCormack v. Warren, 228 Miss. 617, 628-29, 89 So.2d 702, 706 (1956); Restatement (Second) of Property, Donative Transfers, § 33.1, Comment F (Ten. Draft No. 12, Mar. 28, 1989). Our Court does not lightly credit claims a man has revoked his will, by destruction or otherwise. We have accepted that a testator’s *403 intent to revoke “must appear clearly and unequivocally.” McCormack v. Warren, 228 Miss, at 628-29, 89 So.2d at 706 (quoting 57 Am.Jur., Wills § 494); see, Adams v. Davis, 233 Miss. 228, 237-38, 102 So.2d 190, 194 (1958). These views reflect the importance our people give the will as a man’s means of directing disposition of his property at his death.
If a man destroys his will with intent to revoke it, obviously the will will not be found at his death, but the converse does not follow. That a man’s will be not found at his death does not necessarily mean he destroyed it nor that he intended revocation. Our concern has been how we should read the circumstantial evidence, and, in such an instance, if it be known where a man kept his will, that prior to his death it was last known to be in his possession or subject to his exclusive dominion and control, common experience suggests destruction with intent to revoke the likely explanation. Uncertainties remain, but such cases do arise and must be adjudged and, to the end that they be adjudged on a principled basis, we have made a policy choice. We have created, as a rule of evidence, a rebuttable presumption of destruction with intent to revoke.
Berry claims this presumption, and it is central to this suit, and we need be clear of its contours. It arises when the evidence shows (a) the would-be testator made a will, (b) last known to have been in its maker’s possession prior to his death, but (c) not found after death despite diligent search. Where these facts be found and not rebutted, our law presumes that the decedent before his death revoked his will by destroying his will. Employing good Latin legalese, we say he “destroyed it animo revocand.” Estate of Willis v. Willis, 207 So.2d 348, 349 (Miss.1968); Weems, Wills and Administration of Estates in Mississippi, § 5-2 (1988). We have added that the presumption is not overcome merely “by proof that persons injuriously affected by the will had opportunities to destroy it.” James v. Barber, 244 Miss. 234, 142 So.2d 21, 27 (Miss.1962) (citing 57 AmJur., 389, Wills § 568).
The presumption has a further, critical dimension. It is rebuttable. Our later cases say it may be overcome only by “clear and convincing” evidence that the testator did not destroy it or that, if he did, he did so accidentally or otherwise without intending revocation. Estate of Willis, 207 So.2d at 349; James v. Barber, 244 Miss. 234, 142 So.2d 21, 27 (1962). Regarding the burden at issue, the Adams Court quoted with approval a more complex exposition found in 1 Jarman, A Treatise on Wills, Sixth Edition, Chapter VII, page 152,
If a will is traced into the testator’s possession, and is not found at his death, the presumption is that he destroyed it for the purpose of revoking it; but the presumption may be rebutted, and it will be more or less strong according to the character of the custody which the testator had over the will. It is difficult to lay down any general rule as to the nature of the evidence which is required to rebut the presumption of destruction: It depends to a considerable extent on the testator’s property and his relations towards his family. Where the will makes a careful and detailed disposition of the testator’s property, and nothing happens to make it probable that he wishes to revoke it, the presumption raised by the disappearance of the will may be rebutted by slight evidence, especially if it is shown that the access to the box, or other place of deposit where the will was kept, could be obtained by persons whose interest it is to defeat the will. In fact, it may almost be said that in such a case the presumption is the other way, namely that the testator did not intend to die intestate.
Adams, 102 So.2d at 194. In the case sub judice, the Chancery Court also quoted on this Adams-approved approach. See also, 1 Homer, Probate Practice and Estates, § 79 (4th Ed.1990).
We do not know exactly what happened to Felton Leggett’s will. Probably, we will never know. Smith strongly intimates that Berry somehow gained access to the desk, took the will and destroyed it. Much of Berry’s evidence and argument *404 are to the effect that Smith was the one with access to the locked roll-top desk. Each perspective is quite consistent with the Chancery Court’s pivotal evidentiary finding
... that Mr. Leggett kept his will in a locked drawer in his roll-top desk where it remained until sometime in October of 1988, when entrance was gained to the drawer by a party or parties unknown and the contents thereof removed.
This suggests affirmance.
The proof aside, Berry argues that en route to this finding, so crucial to overcoming the presumption of revocation, the Chancery Court misapprehended the quantum of proof Smith was required to produce. He challenges on this ground our prerogative to affirm the Court’s finding of non-destruction. He says, because the Court applied an erroneous and impermissi-bly lighter standard of proof, we should not give the Court’s findings the deference normally accorded findings of fact, as we may not know what that Court would have found and how it would have ruled had it applied an appropriately difficult burden to Smith’s evidence.
Berry’s theoretical premise is not without merit. Where a trier of fact has acted under an erroneous quantum of proof requirement, and where the error was contrary to the interest of the party pressing the point, we have often reversed. See McClendon v. State, 539 So.2d 1375, 1377-78 (Miss.1989) (post-conviction prisoner/petitioner held to clear and convincing evidence standard when his claim should have been considered under a preponderance of the evidence standard); McGory v. Allstate Insurance Co., 527 So.2d 632, 638 (Miss. 1988) (civil arson defense presented to jury under preponderance standard, when it should have been subjected to clear and convincing evidence standard).
It is certainly true that the Chancery Court in its opinion makes several less than precise references to Smith’s legal burden. In candor it must be conceded these references are all taken almost verbatim from prior opinions of this Court. What is important is the language the Chancery Court used in making its findings. The phrases “uncontroverted testimony,” “clearly and convincingly establishes,” and “according to the overwhelming weight of the credible testimony” regularly precede the Court’s findings in Smith’s favor. A fair reading of the Chancery Court’s opinion suggests that Court was troubled by this Court’s prior quotations in Adams v. Davis and by the treatise authority there accepted, to the effect that the presumption may vary with the circumstances. In this view and in an abundance of precaution, the Court below subjected all of its findings to a clear and convincing evidence standard or the equivalent thereof. Assuming arguendo that on these facts a clear and convincing evidence standard obtained, the Court in fact applied such a standard. Hence, Berry’s claim collapses.
Given the state of the record which does not include testimony of some of the witnesses heard and evaluated by the Chancery Court, the evidence does appear to support the finding that Leggett neither destroyed nor revoked his will. Leggett talked to people about his will. We know that he had a close and affectionate relationship with his daughter, Jackie Smith, and that this continued into his later years. He frequently told others he was leaving his entire estate to Smith. There is nothing in the record suggesting he may have changed his mind. We are afforded no reason why he may have wished to destroy and thus revoke his will leaving everything to Smith.[2]
Leggett’s relationship with his grandson is another matter. The Chancery Court found that, despite various efforts to show the contrary,
the overwhelming weight of the credible testimony clearly and convincingly refutes and establishes that, at best, a very *405 poor relationship existed between Mr. Leggett and his grandson.
The Court found that Berry visited his grandfather infrequently, and almost always at the insistence of his aunt, Jackie Smith. This relationship was particularly strained by Berry’s service of some four years in the Mississippi State Penitentiary at Parchman.[3] To the point, the Court found
There is not one credible shred of evidence in the record which would remotely support any express desire or inference to the effect that the testator wanted to leave Carl Berry, Jr. any of his property whatsoever.
We credit Leggett with knowledge of the contents of his will, and, further, with knowledge that without a will his property would pass, according to the statutes on descent and distribution, in which event his grandson would take one-half his estate.
The evidence further supports a finding that the desk in which Leggett was known to keep his will was subject to entry by others. We know Berry had read Smith’s copy of the will and knew what it contained. Berry’s wife had at one time lived in the Leggetts’ house, while Berry was in Parchman. The evidence suggests he retained a key to the house. Various of Leggett’s sitters and lady friends were often at the house and took care of his affairs during the months before he died, and these may have had access to the desk. There is evidence that someone had entered the house and the filing cabinets and desk area after Leggett had died and emptied the contents of the filing cabinet drawers. But even if, as Berry argues, Smith had greatest access and for whatever reason took and destroyed the will, it matters not, so long as Leggett did not take and destroy it.
Given these things and the totality of the circumstances, we perceive the evidence such that the Chancery Court could reasonably have found, by clear and convincing evidence, that Felton Leggett had kept his will in the locked desk until some party or parties unknown had gained entrance and removed the contents of the drawer, and, more generally, that Leggett neither destroyed nor revoked his will.
AFFIRMED.
ROY NOBLE LEE, C.J., and HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.

. We are not clear of the contents nor the value of Leggett’s estate. It appears to include (a) a residence on Wheatley Street in Jackson, in which Leggett owned an equity of some $35,000; (b) a residence at 168 North Green Street in Jackson, the value of which is unknown, and (c) a monthly mineral royalty check.

. It is not at all clear in his last year Leggett was competent to revoke his will. See proceedings in Conservatorship of Felton Leggett, Chancery Court of First Judicial District of Hinds County, Mississippi, No. P-7505, and particularly the affidavits of Dr. Billy Watkins and Dr. Gene Wood dated October 31, 1988.

. Berry was charged in Pearl River County with the murder of Charles H. Bledsoe and pleaded guilty to manslaughter. On August 4, 1983, the Circuit Court sentenced him to twenty years imprisonment, with the last six years suspended. Berry was paroled on October 22, 1987, some fourteen months prior to his grandfather’s death.